IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JOSEPH K.,[1]                                                                                      No. 6:23-cv-00311-HL

              Plaintiff,                                                          **OPINION AND ORDER**

      v.

COMISSIONER, SOCIAL SECURITY
ADMINISTRATION

              Defendant.

_____

HALLMAN, United States Magistrate Judge:

      Plaintiff Joseph K. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied Plaintiff's application for Social Security Income

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name for non-governmental parties dand their immediate family members.

Page 1 – OPINION AND ORDER

("SSI") under Title II of the Act. 42 U.S.C. § 401 *et seq*. For the following reasons, the decision of the Commissioner is REVERSED and this case is remanded for further proceedings.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### I.     Plaintiff's Application

Plaintiff alleges disability based on back injury, nerve pain, chronic pain, mobility issues,

Page 2 – OPINION AND ORDER

high blood pressure, depression, and anxiety. Tr. 55-56.[2] At the time of Plaintiff's amended alleged onset date, he was 56 years old. Tr. 48.

Plaintiff protectively applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on June 3, 2019, alleging an initial onset date of December 31, 2004 (DIB) and March 15, 2017 (SSI). Tr. 166, 169, 171. His application was denied initially on October 23, 2019, and on reconsideration on December 23, 2020. Tr. 92, 97, 102, 105. Plaintiff subsequently requested a hearing, which was held on September 10, 2021, before Administrative Law Judge ("ALJ") John Michaelsen. Tr. 33. Plaintiff appeared and testified at the hearing, represented by counsel. Tr. 3-47. With the assistance of counsel, Plaintiff amended his alleged onset date to June 2, 2019, and withdrew his DIB claim. Tr. 38. On October 12, 2021, the ALJ issued a decision dismissing Plaintiff's DIB claim and denying Plaintiff's SSI claim. Tr. 20-21, 28. Plaintiff requested Appeals Council review, which was denied on November 15, 2022. Tr. 1. Plaintiff then sought review before this Court.[3]

## II.   Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At

---

[2] Citations to "Tr." are to the Administrative Record. *See* ECF 7.

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. ECF 14.

Page 3 – OPINION AND ORDER

step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### III.     The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 3, 2019, the alleged onset date. Tr. 23.

At step two, the ALJ determined that Plaintiff has the following medically determinable impairments: "hypertension, obesity, degenerative disc disease, [and] sleep apnea." *Id.* However, the ALJ found Plaintiff did not have an impairment or combination of impairments that "significantly limited (or is expected to significantly limit) the ability to perform basic work activities[.]" *Id.*; 20 C.F.R. § 404.1520(c). Thus, the ALJ found that Plaintiff does not have a "severe" impairment or combination of impairments and was therefore not disabled. Tr. 23-27; 20 C.F.R. § 404.1520(c).

Having found Plaintiff not disabled at step two, the ALJ denied Plaintiff's claim and did not proceed to the remaining steps of the sequential evaluation. 20 C.F.R. § 404.1520(a)(4) ("[i]f the [Agency] can find that [the claimant is] disabled or not disabled at a step, the [Agency] make[s its] determination or decision and . . . do[es] not go on to the next step").

## DISCUSSION

Plaintiff challenges the ALJ's decision to stop the analysis at step two based on finding Plaintiff's obesity and degenerative disc disease "not severe." Pl.'s Br. 4-6. Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record. *Id.* This Court agrees.

### I.     Step Two Standards

At step two, the ALJ determines "whether the claimant had severe impairments during the period for which he seeks disability benefits." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th

Cir. 2023) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). An impairment is severe "if it 'significantly limits' an individual's 'ability to do basic work activities.'" *Id.* (citing 20 C.F.R. § 404.1520(c)). The step-two severity analysis is a "threshold showing," *Yuckert*, 482 U.S. at 147, that serves to "identify[] at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account[.]" *Id.* at 153. In evaluating whether the claimant's impairments are severe, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citations omitted).

To deny a claim at step two, an ALJ must provide "substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Glanden*, 86 F.4th at 844 (citing *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)). *Id.* at 844. Step two is "a *de minimus* requirement that screens out only frivolous claims," *id.* at 843; thus, "properly denying a claim at step two requires an unambiguous record showing only minimal limitations." *Id.* at 844. The Ninth Circuit has emphasized that "[a]n ALJ may find an impairment or combination of impairments 'not severe' at step two only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id.* (simplified); *accord* SSR 85-28 (explaining that ALJs must apply step two using "great care" by proceeding to step three if a clear determination cannot be made).

In addition, the ALJ is "required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *Smolen*, 80 F.3d at 1290. The clear and convincing evidence standard, which is the most demanding required in Social Security cases, applies to the

Page 6 – OPINION AND ORDER

ALJ's review of a Plaintiff's symptom testimony at step two. *Glanden*, 86 F.4th at 846. Thus, an "ALJ can reject the claimant's testimony about the severity of h[is] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1284. "While the ALJ must consider the level of consistency between symptom testimony and the medical evidence, not all inconsistencies are 'sufficient to doom [a] claim as groundless under the de minimis standard of step two.'" *Glanden*, 86 F.4th at 846 (quoting *Webb*, 433 F.3d at 688).

## II.   Analysis

There is no dispute that Plaintiff suffers from the medically determinable impairments of obesity and degenerative disc disease, Tr. 23, or that Plaintiff reported difficulty with standing for more than a few minutes, walking very far, lifting more than five pounds, using the bathroom, and tying his shoes. Tr. 39, 42, 43, 45. Plaintiff also reported shortness of breath on exertion (also known as "dyspnea"), very limited mobility, and intense back pain. Tr. 25, 42, 45.

In addition, two state medical evaluators found that Plaintiff's obesity and degenerative disc disease were both "severe" impairments based on their review of medical records that were available at the time of their assessment. Tr. 59, Tr. 86. And Plaintiff's treating physician stated that Plaintiff could perform only sedentary work due to "chronic low back pain, fatigue, and general weakness." Tr. 882.

Although the ALJ found that Plaintiff's "impairments could reasonably be expected to produce the alleged symptoms," Tr. 24, he also found that "[Plaintiff]'s statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent [with the medical evidence]." *Id.* He therefore concluded that Plaintiff's impairments were not severe. As discussed below, this conclusion was not supported by substantial evidence with respect to Plaintiff's obesity or his degenerative disc disease—much less a combination of the two.

A.      Obesity

Regarding Plaintiff's obesity, the ALJ found that Plaintiff's reports of "shortness of breath on exertion" were inconsistent with his medical examinations that noted "normal" breathing sounds throughout the relevant period. Tr. 25 (citing Tr. 300, 304, 371, 374, 378, 745, 752, 758, 764, 771, and 876-77). On January 29, 2019, Plaintiff's medical notes recorded his vital signs and noted that his "[b]reath sounds normal. He has no wheezes. He has no rales." Tr. 304. However, there is no indication that Plaintiff was exerting himself during the exam, and it is reasonable to infer that Plaintiff was sedentary when the provider was taking his vitals and during the exam. Thus, the fact that Plaintiff's breath sounded "normal" during an exam in January 2019 does not constitute a "clear and convincing reason[] for rejecting [Plaintiff]'s symptom testimony." *See Glanden*, 86 F.4th at 846. In fact, during the same examination on January 29, 2019—and on the same page that notes Plaintiff's "normal" breath—the provider states under cardiovascular symptoms, "Positive for chest pain and dyspnea on exertion." *Id.* The ALJ cites identical language noting Plaintiff's "normal" breath from other medical exams in 2019, 2020, 2021, but again, that evidence is not probative as to whether Plaintiff's obesity caused him shortness of breath *on exertion*. Furthermore, just as Plaintiff was positive for dyspnea on exertion in January 2019 despite his "normal" breathing during the exam, *see* Tr. 304, Plaintiff also had "[i]ncreased dyspnea" in November 2019, Tr. 776, and was "[p]ositive for shortness of breath" in September 2020, Tr. 757—despite observations from both exams cited by the ALJ that his "[b]reath sounds normal." Tr. 745, 758.

The ALJ also found Plaintiff's obesity "not severe" because Plaintiff "was able to go to the gym." Tr. 25. Again, the ALJ misread the record. The ALJ cited a medical record from October 19, 2019 noting that Plaintiff was going to the "gym 3 times a week," Tr. 436, but that

appeared in a section entitled, "History of Present Illness," and is from a medical exam on July 7, 2015. *Id.* The ALJ accurately cites a medical record from January 2019 that addresses Plaintiff's weight gain and makes the comment, "[b]ack to the gym," Tr. 303, but the fact that his doctor encouraged him to go to the gym does not undermine Plaintiff's reports of dyspnea, weakness, fatigue, limited mobility, or back pain. *See Polanco v. Astrue*, CV 08-5550 PJW, 2011 WL 128790, at *3 (C.D. Cal. Jan. 13, 2011) ("the fact that her doctor wanted her to exercise and lose weight—and believed that she could—does not undermine Plaintiff's testimony that she was in too much pain to work"). A medical record dated March 9, 2020, notes that Plaintiff was "working out 2 hours per day doing cardio," Tr. 790, but that is the only indication of such activity, and the ALJ did not cite that evidence in assessing the severity of Plaintiff's obesity; moreover, "not all inconsistencies are 'sufficient to doom [a] claim as groundless under the *de minimis* standard of step two.'" *Glanden*, 86 F.4th at 846 (citing *Webb*, 433 F.3d at 688 (finding "no inconsistency . . . sufficient to doom his claim as groundless at step two" where "the doctors' reports and tests usually correspond with the afflictions [the claimant] perceived" and where the case did not involve a "total absence of objective evidence of severe medical impairment")).

The ALJ also contends that Plaintiff's "gait and balance were normal during the relevant period," Tr. 25, but that is not clearly inconsistent with Plaintiff's obesity-related symptoms. Even if it were, that evidence is insufficient to show that Plaintiff's obesity had "no more than a minimal effect on an [his] ability to work"—even when combined with evidence of Plaintiff working out in March 2020. This is particularly true considering the opinion of two state evaluators who found that Plaintiff's obesity was a "severe" medical impairment in 2019, Tr. 59, and again in 2020, Tr. 86, and the 2021 assessment of Plaintiff's treating physician, Dr.

Page 9 – OPINION AND ORDER

Schumilas, in which he opined that Plaintiff had the ability to perform only sedentary work due to his lower back pain, morbid obesity, sleep apnea, and hypertestosteronemia. Tr. 882-884.

In sum, "[b]ecause the record did not clearly establish [Plaintiff's obesity as] a slight impairment with no more than a minimal effect on [his] ability to work, the ALJ should not have denied the claim at step two." *See Glanden*, 86 F.4 at 848 (citing *Webb*, 433 F.3d at 686).

### B.    Degenerative Disc Disease

The ALJ also erred in stopping the analysis at step two regarding Plaintiff's degenerative disc disease. The ALJ acknowledged imaging from March 2017 that "redemonstrated multilevel degenerative change, with moderate to severe left neural foraminal stenosis at L3-L4 and moderate to severe bilateral neural foraminal stenosis at L4-L5 with moderate spinal canal stenosis at L4-L4." Tr. 25 (citing Tr. 496). The ALJ also noted that "imaging shows degenerative changes." *Id.* Also, in the August 2021 assessment that Dr. Schumilas prepared for Plaintiff's SSI hearing, Dr. Schumilas noted Plaintiff's "chronic low back pain," his ability to perform only sedentary work, and his need to sit and stand at will to "help minimize pain from arthritic lumbar spine." Tr. 882-883. The ALJ found the opinion of Dr. Schumilas "not persuasive" because the ALJ could "find no explanation or support for these findings based on Dr. Schumilas' treatment records[.]" *Id.* Plaintiff, however, presented with back pain in July 2020, and Dr. Schumilas noted his "history of chronic mechanical back pain that causes acute flareups like this every 4 months or so. The pain is sharp and constant." Tr. 811. Plaintiff presented with back pain again in July 2021, and Dr. Schumilas once again noted his "acute flareup of chronic back pain that he has had for about 20 years" and noted the following treatment: "[Plaintiff] will use prednisone for an acute flare. He will have the bariatric surgery and lose weight in order to release the strain on his back." Tr. 879. Although the ALJ generally acknowledged that Plaintiff had been cleared

for bariatric surgery in May 2021, *see* Tr. 25, he did not discuss the surgery in assessing Plaintiff's degenerative disc disease or acknowledge that the surgery was intended to relieve Plaintiff's back pain.

Despite the objective medical evidence of Plaintiff's degenerative disc disease, morbid obesity, and chronic back pain, the ALJ found that his "medical exams do not establish that his [degenerative disc disease] more than minimally impacted [Plaintiff]'s ability to perform basic work activities[.]" Tr. 25. The ALJ noted that Plaintiff was treated with prednisone as needed, *id.*, but that evidence confirms that Plaintiff had intermittent flareups of back pain that were significant enough to require a prescription steroid, and it overlooks that Plaintiff reported that the prednisone was only 80% effective in treating his pain. Tr. 811. The ALJ cited evidence that Plaintiff had a "normal gait and station" and his "lumbosacral spine was nontender with a normal range of motion" on May 14, 2021, Tr. 869, but the purpose of that visit was to "[f]ollow up on back pain" and treat Plaintiff's flareups, Tr. 868, and Dr. Schumilas diagnosed Plaintiff with "mechanical low back pain." Tr. 870. The ALJ also notes that Dr. Schumilas found Plaintiff to have a "normal gait and station" and a "normal range of motion of the spine" in July 2021, Tr. 877, but Dr. Schumilas also noted that Plaintiff's "lumbosacral spine is tender at L4-5" and treated his "acute flareup of chronic back pain" during that exam. Tr. 876. Moreover, the state medical examiner found Plaintiff's degenerative disc disease "severe" based on her review of his records through September 24, 2019, Tr. 55-61, and the second state examiner also found his degenerative disc disease "severe" based his review of Plaintiff's records through December 1, 2020. Tr. 79-89. Based on the opinions of the state medical examiners, Dr. Schumilas, Plaintiff's subjective testimony, and the objective medical evidence, this Court finds that the ALJ's finding

that Plaintiff's degenerative disc disease was "not severe" was not supported by substantial evidence.

In sum, Plaintiff "presented sufficient evidence to overcome the low bar of showing that his claim was not groundless." *Glanden*, 86 F.4th at 848. The ALJ therefore erred in stopping at step two. *See id*. Because the ALJ stopped at step two, further proceedings are warranted. Upon remand, the ALJ must continue with the sequential analysis and determine whether Plaintiff is disabled. *See Kevin L. K. v. Comm'r of Soc. Sec. Administration*, 6:21-CV-01699-JR, 2022 WL 16758208, at *1 (D. Or. Nov. 8, 2022) (finding that the ALJ "committed harmful legal error in concluding that [the] plaintiff's degenerative disc disease was not severe" at step two and therefore remanding and directing the ALJ to take the necessary steps to complete the sequential analysis).[4]

## CONCLUSION

Based on the foregoing, the Court REVERSES the Commissioner's decision and REMANDS this case to the agency for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED February 5, 2024.

ANDREW HALLMAN
United States Magistrate Judge

---

[4] This Court expresses no view as to whether Plaintiff is disabled; rather, this Court finds only that the ALJ's denial at step two was premature.